# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SANDRA L.  JAMES,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 03-1835 (RBW)** |
| | ) | |
| **GORDON R. ENGLAND,** | ) | **ECF** |
| **SECRETARY OF THE NAVY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure on the grounds that Plaintiffs have failed to exhaust their

administrative remedies, individually and as a putative class, or alternatively, Defendant moves

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there

is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of

law.  In the alternative, Defendant moves to transfer venue to the Eastern District of Virginia in

the interests of justice.

In support of this motion, Defendant respectfully submits the attached memorandum of

points and authorities with Exhibits 1 through 20 attached thereto, statement of material facts not

in genuine dispute, and a proposed order.[1]

_____

[1]  Plaintiff will take notice that any factual assertions contained in the accompanying
declarations and other attachments in support of Defendants' motion for summary judgment will
be accepted by the Court as true unless Plaintiff controverts them with his own affidavit or other
documentary evidence.  *See* Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), and LCvR 7.1.

As stated in Fed. R. Civ. P. 56(e):

Supporting and opposing affidavits shall be made on personal knowledge, shall
set forth such facts as would be admissible in evidence, and shall show

Respectfully submitted,

/ s /

_____
ROSCOE C. HOWARD, JR., D.C. Bar # 246470
United States Attorney

/ s /

_____
MARK E. NAGLE, D.C. Bar # 416364
Assistant United States Attorney

/ s /

_____
ULDRIC L. FIORE, JR., D.C. Bar # 386152
Assistant United States Attorney
Judiciary Center Building, 10th Floor
555 4th Street, NW
Washington, D.C. 20530
202-307-0299

Of Counsel:

Dale S. Birdoff
Naval Sea Systems Command
SEA 00L
1333 Isaac Hull Ave., S.E. Stop 1150
Washington Navy Yard, D.C. 20376-1150

John D. Noel
Navy Litigation Office
Office of the General Counsel
720 Kennon St., S.E.
Washington Navy Yard, D.C. 20374-5013

_____

affirmatively that the affiant is competent to testify to the matters stated therein.
Sworn or certified copies of all papers or parts thereof referred to in an affidavit
shall be attached thereto or served therewith.  The court may permit affidavits to
be supplemented or opposed by depositions, answers to interrogatories, or further
affidavits.  When a motion for summary judgment is made and supported as
provided in this rule, an adverse party may not rest upon the mere allegations or
denials of the adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth specific facts
showing that there is a genuine issue for trial.  If the adverse party does not so
respond, summary judgment, if appropriate, shall be entered against the adverse
party.

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SANDRA L.  JAMES, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 03-1835 (RBW)** |
| | ) | |
| **GORDON R. ENGLAND,** | ) | **ECF** |
| **SECRETARY OF THE NAVY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant files this Memorandum in support of its Motion to Dismiss, or in the Alternative, for Summary Judgment, and in support of its Motion to Transfer of Venue to the Eastern District of Virginia.  Exhibits 1 through 20, support this Motion.

## I.  INTRODUCTION

Plaintiffs filed this employment discrimination action, alleging that the Naval Sea Systems Command ( "NAVSEA"), Department of the Navy (hereinafter, "Agency" or "Defendant") discriminated against them on the basis of their sex (female), and/or race (African American), and/or age (over 40 years of age) and/or disability (unspecified) when they were adversely affected by a reduction-in-force (RIF) effective July 1, 2001.[1]  Compl.¶ 1.

---

[1]  At all times relevant to the process, actions, decisions and events pertinent to the claims of discrimination in this action, NAVSEA Headquarters, was located in Crystal City, Arlington, Virginia.  Exh. 20, Decl. of Brown, ¶¶ 4 – 9.

Defendant, through its undersigned attorneys, hereby submits this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative for summary judgment because Plaintiffs, individually and as a putative class, have not exhausted administrative remedies for the allegations contained in Plaintiff's Complaint. Defendant also moves to transfer venue to the Eastern District of Virginia because all of the alleged discriminatory actions and decisions took place in Arlington, Virginia and venue is otherwise more appropriate in Virginia. [1]

## II. BACKGROUND

Between June 1, 2001 and July 20, 2001, the twelve named Plaintiffs, former and in most cases present administrative and clerical employees of the NAVSEA, filed individual, informal complaints, each alleging that she had been discriminated against when she received a "Specific Reduction-in-Force (RIF) notification and an offer of Vacant Position in Lieu of Separation" on March 22, 2001. *See* Exhibits 1-12 at 1-3 (EEO Counselor's Reports).[1]

Each individual claimed that white male managers "went after the most powerless group of employees in selecting the focus for the A-76 [study]." *Id*. at 5. They also alleged that the A-76 study of approximately 300 employees, comprised of about 97% female and more than 50% African American, had a disparate impact on them. *Id*. at 3-4.

Between September 6 and 17, 2001, each of the thirteen informal complainants filed a formal, individual complaint of discrimination. *See Id.* at 6-7 (Formal Complaints of

---

[1]  Plaintiffs have filed a Motion for Class Certification in this action. Defendant is simultaneously filing a Motion to Postpone Briefing with Respect to Plaintiffs' Motion for Class Certification and will not deal with Fed. R. Civ. P. 23 issues herein.

[1]  Exhibits 1-12 are EEO File Extracts for each Plaintiff, numbered in the alphabetical order of Plaintiff last names. Page references within each of these exhibits are "Bates" numbers unless otherwise noted.

Discrimination).  The complainants referenced their notices of final interview on their individual complaints.

After considerable processing not relevant to this motion surrounding a motion for class certification in the administrative proceeding, on February 26, 2003, an EEOC Administrative Judge dismissed the class complaint and directed Defendant to process the complaints as individual complaints under 29 C.F.R. 1614.302(d).  Exh. 15.  Thereafter, Defendant affirmed the dismissal of the class complaint in its Final Agency Decision (FAD) dated March 21, 2003. Exh. 16.  Plaintiff James, as administrative class agent, received a copy of this FAD on March 27, 2003.  *Id*. at 6.[1]  The FAD advised Plaintiffs of their right to file a civil action in district court within 90 days of their receipt of Defendant's FAD or to file an appeal with the EEOC within 30 days of their receipt of the FAD.  *Id*. at 2-3.  Plaintiffs did not file an appeal with the EEOC.

On May 29, 2003, Defendant dismissed each of the individual complaints for untimely counselor contact.  Exhs. 1-12, at 8-9(Final Agency Decisions on Individual Complaints). Plaintiffs' counsel received a copy of these dismissals on June 5, 2003.  *Id*.  Plaintiffs did not appeal the dismissals of their individual complaints to the EEOC.

Plaintiffs filed this action on September 3, 2003 alleging that Defendant discriminated against them on the basis of their sex (female), and/or race (African American), and/or age (over 40 years of age) and/or disability (unspecified) when they were adversely affected by a reduction-in-force (RIF) effective July 1, 2001.  Compl.¶ 1.

_____

[1]   Plaintiffs' counsel  received a copy of the FAD on March 28, 2003.  *Id*.  Counsel for the individual complainants and the putative class in the EEOC proceeding, Joseph Gebhardt, represents Plaintiffs in this action.

### III.  <u>SUMMARY OF ARGUMENT</u>

Although Plaintiffs' Complaint alleges that they were subjected to a discriminatory RIF effective July 1, 2001, Plaintiffs' real claim is that they were discriminated against when they were "targeted" for an A-76 study and when Defendant decided to eliminate their positions, offering instead positions at lower grades.  *See generally* Compl.  Plaintiffs have failed to exhaust their administrative remedies with respect to their claims of discrimination since no Plaintiff contacted an EEO counselor within 45 days of the alleged discriminatory event, as required by EEOC regulations.

Although the alleged targeting of the class for an A-76 study does not constitute an "adverse employment action" under the law of this Circuit, it resulted in a RIF in which Plaintiffs clearly were subjected to an "adverse employment action" on March 22, 2001, when they were notified that their positions would be eliminated (*i.e.,* they would be separated from those positions) and that they would be offered new positions in the agency.

Therefore, Plaintiffs were required to contact an EEO counselor within 45 days of their receipt of the March 22, 2001notification – by no later than May 6, 2001.  No Plaintiff contacted a counselor until June 2001 –  well beyond the required 45-day time period.  Since no Plaintiff contacted a counselor within the required 45-day time period, Plaintiffs individually have failed to exhaust their administrative remedies.   Moreover, since no putative class member has exhausted administrative remedies by contacting an EEO counselor within the 45-day period, the putative class also has failed to exhaust administrative remedies.

In addition, venue for this case should be transferred to the Eastern District of Virginia, where the decisions and actions that form the basis for Plaintiffs' complaints of discrimination occurred, and where it is otherwise most appropriate.

4

## IV.  STATEMENT OF FACTS

### A.    A-76 Study

In the first of many meetings held on a monthly basis, to educate and inform all affected employees about the process and the status of the study a meeting, on May 12, 1999, employees at NAVSEA headquarters were notified that an A-76 study of the 324 administrative and clerical positions would begin.  Exh.17 at 4.  Prior to that meeting, affected employees received individual notification of the A-76 study.  *Id*. at 7-9.   Summaries of the meetings were often printed in the NAVSEA magazine, *The Observer*, and presentations were made available on the NAVSEA intranet.  *Id*. at 4.

As early as May 1999, affected employees were briefed on the possibility that their positions could be abolished if a contractor was successful in the cost comparison and the administrative/clerical work was contracted out.  They were also advised of the potential for reductions in numbers and grade levels if the Most Efficient Organization (MEO) was successful in the competition.  *Id*.  In August 1999, affected employees were briefed on the possibility that a Reduction in Force (RIF) would need to be conducted either because of a change in the organizational structure to the MEO or because the work could be contracted out.  *Id*.

On August 1, 2000, the solicitation was issued.  *Id*. at 5, 10.  Subsequently, an agency study team, which included administrative/clerical employees, including Plaintiff Parker, developed a management plan that included a technical performance plan, an in-house cost estimate, a description of the MEO, a transition plan, and a quality assurance surveillance plan. The MEO was certified by NAVSEA in October 2000.  *Id*. at 5, 11-12.

On December 8, 2000, after a comparison of the in-house cost estimate and the best contractor offer, the tentative decision to retain the administrative and clerical function in-house was announced. *Id*. This decision was made by Peter F. Brown, NAVSEA's Executive Director. Exh. 18, Declaration of Peter F. Brown, ¶ 7. At the same time, affected employees were again briefed on the structure and composition of the MEO, as well as on the concept and locations of the Business Service Centers (BSCs). This briefing included information on a variety of topics including: the number of positions in the new organization and their associated grade levels, grade and pay retention, the need to conduct a placement RIF and how the RIF would be implemented. Exh. 17 at 5-6. Finally, the briefing addressed the Priority Placement Program (PPP), the Department of Defense's (DoD) automated placement program to register and match well-qualified displaced or downgraded employees with vacant positions elsewhere in DoD. *Id*. at 5.

An appeal of the tentative decision to retain the administrative and clerical function in-house was filed on January 30, 2001. *Id*. at 6, 13. The appeal was denied on February 21, 2001. *Id*. at 6, 14-16. No protest was filed with the General Accounting Office. *Id*. at 6. Thereafter, on March 13, 2001, employees were advised of the final decision to retain the administrative and clerical function in-house. *Id*. Affected employees were briefed again on the composition of the MEO, including the number of positions in the MEO and their associated grade levels. They were advised that some positions in the MEO would be at a lower grade than their current positions. Finally, they were advised that a RIF would be used to effect the new organization. *Id*.

6

**B.      The Reduction-in-Force (RIF)**

As a result of the decision to retain the administrative and clerical function in-house and to implement the MEO, a reorganization was effected utilizing the RIF procedures of 5 C.F.R. 351.  Exh. 20 at 2.  On March 22, 2001, 138 administrative and clerical employees, including all of the Plaintiffs named in this action, received notices that advised them that because of the decision to retain the administrative and clerical function in-house, they would be separated from their current positions on June 30, 2001.  *Id*.  Affected employees also were notified that they were being offered new positions in the MEO.[1]  *Id*.  Employees were advised that if the offered position was at a lower grade than their current position, and if they met other eligibility requirements, they would receive grade retention for up to two years.  *Id*. at 3.  They also were advised that after completing 2 years of grade retention, those meeting eligibility requirements would continue to receive pay retention until their basic rate of pay was equal to or greater than their retained pay.  *Id*.  Any employee who declined the offered position became ineligible for grade and pay retention and ineligible to participate in the PPP.  *Id*.

Seven of the Plaintiffs named in this action (Bienz, Broyles, Pelzer, Poole, Silkes, Smith, and Thomas), ultimately were assigned positions at a lower grade (with save grade and save pay benefits) as a result of the RIF (*i.e.*, "RIF demoted").   Five of the Plaintiffs named in this action (Dingle, Garner, James, Parker, and Simpkins) were reassigned to positions at the same grade and pay, and with the same benefits as a result of the RIF (*i.e.*, "RIF reassigned").  *See* Compl..

---

[1]  Seven (7) employees received notices offering positions outside the MEO based on their eligibility to "bump" or "retreat" into those positions.

**C.      The Individual Administrative Complaints of Discrimination**

Between June 1, 2001 and July 20, 2001, all 12 of the Plaintiffs named in this action,

filed individual, informal complaints, each alleging that she had been discriminated against when

she received a "Specific Reduction-in-Force (RIF) notification and an offer of Vacant Position in

Lieu of Separation" on March 22, 2001.  *See* Exhs. 1-12 at 1-3.  Each complainant claimed that

white male managers "went after the most powerless group of employees in selecting the focus

for the A-76 [study]." *Id*. at 5.  Each complainant also alleged that the A-76 study of

approximately 300 employees, comprised of about 97% female and more than 50% African

American, had a disparate impact on them. *Id*. at 3-4.

Between September 6 and 17, 2001, the 12 Plaintiffs named in this action filed individual

formal complaints of discrimination.  *See* Exhs.1-12 at 6-7.  On May 29, 2003, Defendant

dismissed each of the thirteen individual complaints including the complaints of all 12 of the

Plaintiffs named in this action, for untimely counselor contact.  Exhs. 1-12 at 8-9.  Counsel for

the 12 individual complainants, Joseph Gebhardt, who also represents Plaintiffs in this action,

received a copy of these dismissals on June 5, 2003.  *Id*.

Plaintiffs did not appeal the dismissals of their individual complaints to the EEOC.

**D.      Administrative Class Complaint**

On August 29, 2001, the informal complainants, filed a "Motion for Class Certification"

("Motion") with Defendant pursuant to Equal Employment Opportunity Commission ("EEOC")

regulations at 29 C.F.R. 1614.204(b). Exh. 13.  The Motion sought certification of a class of

approximately 137 present and former administrative and clerical employees at NAVSEA who

are female and/or African American and/or over 40 years of age. *Id*. at 1.  The Motion alleged

that white male management officials singled out the administrative and clerical staff for the

A-76 study and then discriminated against them when they abolished their positions through a RIF. *Id.* at 3, 7-8, 11-12.

On November 13, 2001, complainants James, Parker and Broyles filed a formal administrative class complaint on behalf of the putative class of approximately 137 present and former administrative and clerical personnel. Exh.14. The class complaint referenced the Motion for Class Certification and the notices of final interview issued to James, Parker and Broyles at the conclusion of counseling on their individual complaints. *Id.* On December 13, 2001, the Defendant forwarded to the EEOC a copy of the class complaint and other pertinent materials.

On February 26, 2003, an EEOC Administrative Judge dismissed the class complaint and directed Defendant to process the complaints as individual complaints under 29 C.F.R. 1614.302(d). Exh. 15. Defendant issued a Final Agency Decision (FAD) dismissing the class complaint on March 21, 2003. Exh. 16. Administrative class agent James received a copy of the FAD on March 27, 2003. *Id.* at 6. Counsel for the putative class in the EEOC proceeding, Joseph Gebhardt, who also represents Plaintiffs in this action. received a copy of the FAD on March 28, 2003. *Id.*

The FAD advised Plaintiffs of their right to file a civil action in district court within 90 days of their receipt of Defendant's FAD or to file an appeal with the EEOC within 30 days of their receipt of the FAD. *Id.* at 2-3. Plaintiffs did not file an appeal of the dismissal of the class complaint with the with the EEOC.

### E.    Venue

NAVSEA headquarters at all times relevant to the process, actions, decisions and events pertinent to the claims of discrimination in this action, was located in Crystal City, Arlington,

Virginia.  Exh. 18, Declaration of Peter F. Brown, ¶¶ 4 – 9.  On July 19, 2001, NAVSEA

Headquarters re-located from Crystal City, Arlington, Virginia to the Washington Navy Yard,

Washington, D.C.  *Id.* ¶ 10.

  The employment records, Official Personnel Files(OPFs), for 11 of the Plaintiffs are

maintained at the Navy Human Resource Service Center - Northwest, in Silverdale, Washington

(State). Exh. 19, Declaration of William D. McCafferty, ¶¶ 2-3.  The employment records (OPF)

for Plaintiffs Silkes is maintained at the Federal Records Center in St. Louis, Missouri.  *Id*. ¶ 5.

  Records of the budgetary decisions, the ensuing A-76 Study, the MEO, the Cost

Comparison, and the RIF action are located in the Pentagon, in Arlington, Virginia, the

Washington Navy Yard, in Washington, D.C., and in the individual Plaintiff's OPFs, which are

predominantly in Silverdale, Washington.

  Plaintiffs all were employed at NAVSEA headquarters in Crystal City, Arlington,

Virginia prior to the initiation of the A-76 Study and through the completion of the MEO, Cost

Comparison, selection and decision to conduct the RIF.  Eight of the named Plaintiffs presently

work in Washington, D.C. at the Washington Navy Yard.  Dingle relocated to the Washington

Navy Yard on June 16, 2001, and Bienz, Garner, Pelzer, Poole, Simpkins, Smith and Thomas

relocated there on June 30,2001.  Plaintiff Silkes relocated to the Washington Navy Yard on

June 30, 2001, but no longer is employed by the Federal government and resides in Florida.

Three of the named Plaintiffs relocated to and presently work in Arlington, Virginia at the U.S.

Marine Corps Annex.  Broyles relocated to the Marine Corps Annex on June 2, 2001, Parker on

June 16, 2001 and James on June 30,2001.

  Five of the named Plaintiffs (Bienz, Broyles, Garner, Poole and  Smith ) reside in

Virginia; four of the named Plaintiffs (Dingle, James, Simpkins and Thomas,) reside in

Maryland; two of the named Plaintiffs (Parker and Pelzer) reside in Washington, D.C.; and Plaintiff Silkes resides in Florida.

The principal office of Defendant, Secretary of the Navy, is the Pentagon, located in Arlington, Virginia.  *See* <u>Monk v. Secretary of the Navy</u>, 793. F.2d. 364, 369 n.1 (D.C. Cir. 1986).

On July 19, 2001, NAVSEA Headquarters re-located from Crystal City, Arlington, Virginia to the Washington Navy Yard, Washington, D.C.  Exh. 20 ¶ 10.

## V.  <u>STANDARD OF REVIEW</u>

### A.     <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing* <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979)).  When considering a motion to dismiss under Rule 12(b)(6), the Court must resolve all factual doubts in favor of the Plaintiff and allow the Plaintiff the benefit of all inferences.  *See* <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).  While plaintiff is entitled to all favorable inferences that can be drawn from those allegations, <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975), the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  <u>Kowal</u>, 16 F.3d at 1276.  Further, while the court must accept plaintiff's allegations of fact as true, the court is not required to accept as correct the conclusions plaintiff would draw from such facts.  <u>Taylor v. Federal Deposit Insurance Corp.</u>, 132 F.3d 753, 762 (D.C. Cir. 1997); <u>National Treasury Employees Union v. United States</u>, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  "Nor must the court accept legal conclusions cast in the form of factual allegations."  <u>Kowal</u>, 16 F.3d at 1276; *see also* <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

Where matters outside the pleadings are presented to the court in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the motion shall be treated as a motion for summary judgment and disposed of under Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12.

**B.      Summary Judgment**

In 1986, the Supreme Court issued three opinions that clarified the standards governing consideration of motions for summary judgment under Fed. R. Civ. P. 56.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex at 322; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson, 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247.  The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case.  Celotex, at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case."  Id.  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.  Matsushita, 475 U.S. at 586.  Fed. R. Civ. P. 56 requires the party opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there

12

is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Banks v. C & P Tel.</u>
<u>Co.</u>, 802 F.2d 1416 (D.C. Cir. 1986). Thus to avoid summary judgment, the Plaintiff must state
specific facts or present some objective evidence that would enable the court to find an
entitlement to relief.

In an opinion issued the same day as <u>Celotex</u>, the Supreme Court explained the
circumstances where summary judgment is appropriate: "if the evidence is merely colorable . . .
or is not sufficiently probative . . . summary judgment may be granted . . . (T)he mere existence
of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be
evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.
Unsupported speculation is not enough to defeat a summary judgment motion; the existence of
specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e) (the nonmoving party
may not rest on mere allegations but "must come forward with 'specific facts showing there is a
genuine issue for trial."). *See also* <u>Hayes v. Shalala</u>, 902 F.Supp. 259, 263 (D.D.C. 1995)
(opposition to summary judgment must consist of more than mere unsupported allegations or
denials); <u>Johnson v. Digital Equip. Corp.</u>, 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is
merely colorable or not sufficiently probative is insufficient to defeat summary judgment); <u>Baton</u>
<u>v. Powell</u>, 912 F.Supp. 565, 578 (D.D.C. 1996).

The mere existence of some factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the requirement is that there be no
genuine issue of material fact. *See* <u>Anderson</u>, 477 U.S. at 247-248. Perhaps most significantly,
the Court authorized weighing the evidence at the summary judgment stage of litigation, stating
that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in
order to see whether there is a need for a trial.'" *Id.* (citation omitted). "[T]here is no issue for

13

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249-250 (citations omitted). If the evidence is "merely colorable, or is not significantly probative," or where the record taken as a whole could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Id.*; Matsushita, 475 U.S. at 587.

Thus, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," (Matsushita at 586), or with "conclusory allegations . . . unsubstantiated assertions, . . . or a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Importantly for this case, "[b]y pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment." Shelborne v. Runyon, 1997 WL 527352 at **3, *citing* Celotex, 477 U.S. at 325.

In Celotex, the Supreme Court further instructed that the "(s)ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1). A court should grant summary judgment if the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claims or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Celotex, 477 U.S. at 331.

**C**. **Venue**

Regarding a motion of improper venue raised under Rule 12(b)(3), the court will again accept as true the plaintiff's well-pled allegations and will draw all reasonable inferences from those allegations in the plaintiff's favor (although the court need not accept plaintiff's alleged

legal conclusions as true).  Darby v. Department of Energy, 231 F. Supp.2d 274, 276 (D.D.C. 2002).  In making venue determinations, the courts look to the applicable statutes to determine where venue should lie.  In the present action, the court must look to 42 U.S.C. § 2000e *et seq*. to determine whether venue in this court is proper.  The court must also be mindful that the statutory scheme behind Title VII cases indicates that venue properly lies in those jurisdictions concerned with the alleged discrimination.  Stebbins v. State Farm Mutual Automobile Insurance Co., 413 F.2d 1100, 1102-03 (D.C.Cir. 1969) *cert. denied* 396 U.S. 895 (1969).

## ARGUMENT

### A.    Plaintiffs' Failed to Exhaust Their Administrative Remedies.

The exclusive remedy for a federal employee who claims race and sex discrimination is Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*., and the plaintiff must comply with its administrative exhaustion requirements as a precondition to her suit.  *See* Bayer v. Department of Transportation, 956 F.2d 330, 332 (D.C. Cir. 1992), *citing* Brown v. General Services Administration, 425 U.S. 820 (1976).  Similarly, claims of disability discrimination under the Rehabilitation Act and claims of age discrimination under the ADEA are also subject to the exhaustion requirement.[1]  Chennareddy v. Bowsher, 935 F.2d 315,317 (D.C. Cir 1991); Ward v. Federal Communications Commission, 133 F. Supp. 2d 54, 56-57 (D.D.C. 2000); Rattner v. Bennett, 701 F. Supp. 7,9 (D.D.C. 1988).  Only upon exhaustion of administrative proceedings is a complainant entitled to a trial *de novo*.  Chandler v. Roudebush,

---

[1]  Plaintiffs Complaint is unclear as to whether Plaintiffs allege disparate impact under the ADEA (29 U.S.C. § 629, *et seq*.).  To the extent Plaintiffs make this claim, its dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.  This district has held that the disparate impact theory is not cognizable under the ADEA.  Hyman v. First Union Corp., 980 F.Supp. 38, 46 (D.D.C. 1997); *see also*, Labor Pool v. NLRB, 323 F.3d 1051, 1060 (D.C. Cir. 2003).

425 U.S. 840 (1976); Saksenasingh v. Department of Education, 126 F.3d 347, 350 (D.C. Cir.

1997).  Claims that a party failed to exhaust her administrative remedies are properly raised via a

dispositive motion raised pursuant to Rule 12(b)(6).  Keith v. The United States Railroad

Retirement Board, 2003 U.S. Dist. Lexis 17067 (D.D.C. 2003).  *see also* Smith-Haynie v.

District of Columbia, 155 F.3d 575 (D.C. Cir. 1998).

In the context of federal discrimination claims, administrative "exhaustion" requires the

plaintiff to file a timely administrative charge.  Kizas v. Webster, 707 F.2d 524, 543 (D.C. Cir.

1983) (Title VII); Tyler v. United States Postal Service, 2001 U.S. Dist. LEXIS 2110, at *8

(D.D.C. Feb. 22, 2001) (ADEA); Speiser v. Department of Health and Human Services, 670 F.

Supp. 380, 382 (D.D.C. 1986) (Rehabilitation Act).  Pursuant to authority delegated in these

laws, the EEOC has promulgated regulations governing the applicable administrative remedies.

*See* 29 C.F.R. 1614 *et seq*.

EEOC regulations require that an employee who believes that she has been discriminated

against by a federal agency must contact an EEO counselor within 45 days of the date of the

matter alleged to be discriminatory, or, in the case of a personnel action, within 45 days of the

effective date of the action. 29 C.F.R. 1614.105(a)(1).  *See* Bayer v. Department of

Transportation, *supra,* 956 F.2d 330, 332 (D.C. Cir. 1992).  This filing requirement is subject to

equitable tolling.  Currier v. Radio Free Europe, 159 F.3d 1363, 1367 (D.C. Cir. 1999); Jarrell v.

United States Postal Service, 753 F.2d 1088, 1091-92 (D.C. Cir. 1985).  Tolling, however, is

proper only for good cause shown**.**

Indeed, equitable tolling is proper "only in extraordinary and carefully circumscribed

instances." Mondy v. Secretary of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  Thus,

tolling was proper in Keith v. The United States Railroad Retirement Board, 2003 U.S. Dist.

Lexis 17067 (D.D.C. 2003), where the plaintiff diligently pursued her case but filed 92 days late,

in part, because the Agency mailed the final agency decision to the wrong address and could not prove that it had mailed it to the plaintiff's attorney.  It is not appropriate for mere garden variety claims of inexcusable neglect.  Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990).  In United States v. Saro, 252 F.3d 449 (D.C. Cir. 2001) (a case under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2255) equitable tolling was improper when plaintiff waited 3 months to file (after learning that his attorney had failed to file the motion) and offered no reason for his delay.  In Smith-Haynie v. District of Columbia, 155 F.3d 575 (D.C. Cir. 1998) a mere allegation of confusion over when she could sue was insufficient to toll the deadline.

In determining the timeliness of an EEO complaint under Title VII, it is essential to identify precisely the unlawful employment practice about which the plaintiff has complained.  Delaware State College v. Ricks, 449 U.S. 250, 257 (1980); Currier v. Radio Free Europe, 159 F.3d 1363, 1366 (D.C. Cir. 1999).  Further, the United States Supreme Court has repeatedly held that the limitations period in Title VII runs from the date of the discrete allegedly discriminatory act, not from the date the last effect of that act is felt.  Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989), *superseded on other grounds by* 42 U.S.C. § 2000e-5(e)(2); Chardon v. Fernandez, 454 U.S. 6, 8 (1981) ("the proper focus is on the time of the discriminatory act, not at the point at which the consequences of the act become painful"); United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). *See also* Jarmon v. Powell, 208 F. Supp. 2d 21, 30 (D.D.C. 2002); Thompson v. Capitol Police Board, 120 F. Supp. 2d 78,82 (D.D.C. 2000).[1]

---

[1] One circuit and several district courts have interpreted Delaware State College v. Ricks, *supra*, and found that the time period for contacting a counselor (or filing a charge with EEOC) begins on the date of notice of the final decision.  *See* Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995) (notice of termination through RIF); Foster v. BJC Health System, 121 F. Supp. 2d 1280, 1285 (E. D. Mo. 2000) (notice of elimination of position); Lieberman v. Miami-Dade County, 2000 U.S. LEXIS 14789, at *6-8 (S.D. Fla. Aug. 16, 2000) (notice of demotion); England and Wise v. United Insur. Co. of America, 97 F. Supp. 2d 1090, 1093 (M.D. Ala. 2000) (notice of termination through RIF); Bilton v. Monsanto Co., 947 F. Supp. 1344, 1351-1352 (E.D. Mo. 1996) (notice of elimination of position); Taylor v. Battelle Columbus Laboraties, 680 F. Supp. 1165, 1170 (S.D. Ohio 1988) (notice of termination by RIF).

A close reading of the Complaint shows that Plaintiffs are alleging discrimination when NAVSEA managers "targeted" the administrative and clerical employees for an A-76 study and when NAVSEA decided to abolish the administrative and clerical positions.  Compl. ¶¶ 34-43 (disparate impact on females, African Americans, or older workers).[1]  Indeed, all allegations of discrimination focus on the decisions to conduct the A-76 study and then to abolish the positions, as announced in the notices of March 22, 2001.  Compl.¶¶ 1, 30-31, 33-43.  To the extent that the Complaint mentions subsequent events, including the RIF, it merely states the harm that the Plaintiffs allegedly suffered as a result of the decision to abolish their positions.  As set forth in Ricks, these post-March 22 events are but the delayed, inevitable consequences of the decision to abolish the positions and do not extend the time period for contacting an EEO counselor.  Delaware State College v. Ricks, 449 U.S. 250, 257-258 (1980); *see generally* Kyriakopoulos v. George Washington University, 866 F.2d 438, 448 (D.C. Cir. 1989).[1]

Accordingly, March 22, 2001 is the date that starts the clock on the EEO filing deadline.  On this date, Plaintiffs each received official notification of NAVSEA's final decision to abolish their current positions and to offer them new positions in the MEO.  This decision was not tentative and clearly had a direct impact on the employment status of each Plaintiff, each of whom received a notice. *See* Currier v. Radio Free Europe, 159 F.3d 1363, 1366 (D.C. Cir. 1999); Harris v. Ladner *et. al.*, 127 F.3d 1121, 1124 (D.C. Cir. 1997).

---

[1]  Thus, Plaintiffs cannot claim that they are alleging discrimination in connection with any personnel action that took effect on July 1, 2001.

[1]  Plaintiffs cannot avoid their untimeliness by pleading a "continuing violation," since the March 22, 2001 RIF notice was a discrete event which should have prompted them to contact an EEO counselor with the 45-day time period.  *See* National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122-123 (2002).

Moreover, since no Plaintiff contacted an EEO counselor within the 45-day period following receipt of this notice on March 22, 2001 – by May 6, 2001 – the putative class also has failed to exhaust its administrative remedies.  *See* <u>Singleton v. Harkin</u>, *supra,* 1996 U.S. LEXIS 3865, at *15-16 (D.D.C. March 28, 1996) (date on which federal employee received RIF notice started limitations period for contacting an EEO counselor).

Plaintiffs' complaint was untimely filed.  Their untimeliness is a mere garden variety case of inexcusable neglect.  They have offered no reason why they failed to timely file after receiving the March 22, 2001 notice.  Nor have they made any other allegations that would excuse their untimeliness.  Consequently, dismissal of the individual claims pursuant to Rule 12(b)(6) is proper**.**

**B.**     **Plaintiffs' Complaint is Untimely as a Class Complaint.**

Nor can Plaintiffs rely on the putative class action, as Plaintiffs have failed to timely file a class complaint.  Dismissal for failure to timely file a civil action is properly raised by a dispositive motion under Rule 12(b)(6).  <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d 575 (D.C. Cir. 1998).  A federal employee may file a civil action in district court under Title VII "within 90 days of receipt of notice of final action taken by a department, agency... or the [EEOC]." 42 U.S.C. § 2000e-16(c).  In the case of a class action complaint, a federal class agent must file in district court within 90 days of her receipt of the notice of final action taken by the agency on the administrative class complaint if no appeal has been filed with the EEOC.  *See* 29 C.F.R. ¶ 1614.407(a).[1]  If a complaint is not filed within that time period, it may be dismissed as

---

[1]  The EEOC, in Management Directive (MD) 110, Chapter 10, III, A(1)(a), states that "an agent who has filed a class complaint may file a civil action within 90 days of receipt of the agency's final decision on a <u>class</u> complaint, if no appeal [with the EEOC] has been filed." (emphasis supplied)

untimely.  McKay v. Department of the Navy, 2003 U.S. Dist. LEXIS 5179, at *2 (D.D.C. Mar. 27, 2003), *citing* Brown v. General Services Administration, 425 U.S. 820, 835 (1976) (dismissal of complaint as untimely was proper when plaintiff filed suit after Section 2000e-16(c)'s limitations period); Tyler v. Henderson, 2001 U.S. Dist. LEXIS 2110, 2001 WL 194930, at *11-12 (D.D.C. Feb. 22, 2001) (granting summary judgment for Defendant when plaintiff failed to file suit within 90 days), *aff'd* 21 Fed. Appx. 4, 2001 WL 1297501 (D.C. Cir. 2001).  The 90-day period also is subject to equitable tolling.  *See* Smith-Haynie v. District of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998).  A Title VII plaintiff,  however, bears the burden of proving equitable reasons for her failure to adhere to the 90-day limit.  *See* Salz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982).

As discussed above, equitable tolling is proper "only in extraordinary and carefully circumscribed instances."  Mondy v. Secretary of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  It is not appropriate for mere garden variety claims of inexcusable neglect.  Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990).  In Smith-Haynie v. District of Columbia, 155 F.3d 575 (D.C. Cir. 1998) a mere allegation of confusion over when she could sue was insufficient to toll the filing deadline.

In the instant case, Plaintiffs assert that this class action complaint is timely because it was filed within 90 days of Plaintiffs' receipt of the "Defendant's final agency decision of dismissal."  Compl.¶ 18.  Plaintiffs have not filed within 90 days of the dismissal of the administration class complaint; however, and Plaintiffs have neither asserted nor attempted to prove any reason why the doctrine of equitable tolling should apply.  No such reason is apparent from the record.

Plaintiffs claim that on June 5, 2003 Plaintiffs received a copy of Defendant's "dismissal" of the "formal discrimination complaints of the five Class Agents and seven named class members in a decision issued on May 29, 2003." *Id*. The "final agency decision of dismissal" that Plaintiffs cite, however, is not the FAD on the class complaint (Exh. 16), but rather Defendant's 12 <u>individual</u> FADs dismissing the <u>individual</u> complaints of the 12 complainants. Exhs. 1-12 at 8-9.

The EEOC Administrative Judge issued his decision dismissing the administrative class complaint on February 26, 2003. Exh.15. Defendant issued its FAD on the class complaint on March 21, 2003, within 40 days of February 26, 2003, as required under the regulations. Exh.16. Defendant forwarded a copy of this FAD to Plaintiff James, the class agent, and to the class attorney, Joseph P. Gebhardt. Plaintiff James received a copy of the FAD on the class complaint on March 27, 2003. *Id*. Plaintiffs' attorney received his copy of the FAD on March 28, 2001. *Id*. Since Plaintiffs did not appeal this decision on the class complaint to the EEOC, Plaintiffs were required to file this class action complaint within 90 days of James' receipt of the FAD on the class complaint – no later than June 25, 2003. *See* <u>McKay v. Department of Navy</u>, 2003 U.S. Dist LEXIS 5179 (D.D.C. Mar. 27, 2003). Plaintiffs cannot use the date on which they received the decisions dismissing their <u>individual</u> complaints in order to extend the 90-day time period for filing a class action complaint.

Plaintiffs' class complaint was untimely filed. Their untimeliness is a mere garden variety case of inexcusable neglect. They have offered no reason why they failed to timely file after receiving the final agency decision on the class certification. Nor have they made any other allegations that would excuse their untimeliness. Consequently, dismissal of the putative class complaint pursuant to Rule 12(b)(6) is proper**.**

### C.     Venue is Appropriate in the Eastern District of Virginia.

This complaint arises from claims under Title VII of the Civil Rights Act, as amended,

42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §

621-33 *et seq*., and the Rehabilitation Act, 29 U.S.C.  791 *et seq*.  Compl., 16.

### 1.     Venue For Title VII and Rehabilitation Act Claims

Under 42 U.S.C. § 2000e-5(f)(3), a plaintiff may bring a Title VII action in one of four

judicial districts.  Specifically, the statute provides that a Title VII action may be brought in:

> [1] any judicial district in the State in which the unlawful employment practice is
> alleged to have been committed, [2] in the judicial district in which the
> employment records relevant to such practice are maintained and administered, or
> [3] in the judicial district in which the aggrieved person would have worked but
> for the alleged unlawful employment practice, [4] but if the respondent is not
> found within any such district, such action may be brought within the judicial
> district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).  In a situation in which Defendant cannot be brought before the court

in any of (1)-(3) above, and only in that instance, venue will be proper where Defendant's

principal office is located.  Stebbins, *supra*, 413 F.3d at 1102-03.

This statutory scheme reflects "the intent of Congress to limit venue to the judicial

district concerned with the alleged discrimination."  *Id*.  Similarly, under the Rehabilitation Act,

which incorporates the remedies, procedures and rights of Title VII, venue is governed by 42

U.S.C. § 2000e-5(f)(3).  Archuleta v. Department of Health and Human Services, 725 F. Supp.

602, 604 (D.D.C. 1989); Sconion v. EEOC, 603 F. Supp. 66 , 67 (D.D.C. 1984).

In the instant case, the District of Columbia does not squarely meet the conditions for

venue under the specific Title VII venue statute.  First, the alleged unlawful employment

practices – the alleged targeting of the administrative and clerical positions at NAVSEA

Headquarters for an A-76 study and the decision to abolish those positions occurred,

22

respectively, in May 1999 and March 2001.  Even if the July 1, 2001 RIF could be considered

the alleged unlawful practice, NAVSEA Headquarters was located in Crystal City, Arlington,

Virginia until July 19, 2001.  Exh. 18 ¶ 10.  Furthermore, the principal office of Peter F. Brown,

Executive Director of NAVSEA, who made the decision to implement the MEO, to abolish the

positions, and consequently to conduct a RIF was physically located in NAVSEA Headquarters

in Crystal City, Arlington, Virginia during the relevant time period.  *Id*. ¶ 2.

Second, Plaintiffs' employment records are not maintained and administered in the

District of Columbia.  Indeed, the employment records of those 11 Plaintiffs who are still

employed by NAVSEA Headquarters and at the Marine Corps Annex, including their official

personnel folders, are located in Silverdale, Washington (State).  Exh. 19 ¶ 3.  The employment

records of other Plaintiffs who took positions in other agencies are located around the country,

depending on where their respective agency maintains and administers its records.  Finally, the

employment records of those Plaintiffs who are no longer federal employees are located in St.

Louis, Missouri, where such records are archived.  *Id*.[1]  Moreover, records of the budgetary

decisions, the ensuing A-76 Study, the MEO, the Cost Comparison, and the RIF action are also

located in multiple jurisdictions: the Pentagon, in Arlington, Virginia, the Washington Navy

Yard, in Washington, D.C., and in the individual Plaintiff's OPFs, which are predominantly in

Silverdale, Washington.

---

[1]  This Court has held that the "employment records" contemplated by this venue
provision do not include the discrimination complaint records or the records of the investigation
of the complaint.  Amirmokri v. Department of Energy, 217 F. Supp. 88, 90-91 (D.D.C. 2002).
Further, even if copies of Plaintiffs' employment records are available in the NAVSEA
personnel office, this does not provide a basis for venue.  *See* Washington v. General Electric
Corp., 686 F. Supp. 361, 363 (D.D.C. 1988).

Third, Plaintiffs have made no argument that the decision to abolish their positions and offer them new positions affected the location of their jobs.  In fact, the location of their original employment was Arlington, Virginia and three Plaintiffs continue to be employed in Arlington, Virginia.

Finally, Plaintiffs cannot rely on the fourth prong of the venue statute in 42 U.S.C. § 2000e-5(f)(3) to establish venue in the District of Columbia.  The statute itself provides that this fourth prong is available only "if the respondent is not found within any such district" covered by one of the three preceding categories.  *See* <u>Stebbins</u>, *supra*, 413 F.2d at 1103 ("Only where the putative employer cannot be brought before the court in one of those districts may the action be filed in the judicial district in which he has his 'principal office.'").  In any event, in the present case, Defendant is "found" and subject to suit in Virginia.  For purposes of Title VII, the principle office of Defendant, Secretary of the Navy, is in the Pentagon, which is located in Arlington, Virginia, in the Eastern District of Virginia, notwithstanding that the Secretary receives mail through a Washington, D.C. address.  *See* <u>Monk v. Secretary of the Navy</u>, 793. F.2d 364, 369 n.1 (D.C. Cir. 1986); <u>Watkins v. West</u>, 36 F.3d. 127 (D.C.Cir. 1994); <u>Donnell v. National Guard Bureau</u>, 568 F.Supp. 93, 94-95 (D.D.C. 1983).

Therefore, venue for the Title VII claims is not squarely in the District of Columbia and could properly be in the Eastern District of Virginia as well.

**2.**      **Venue For ADEA Claims**

When a claim is made under the ADEA, venue is proper in any court with competent jurisdiction.  *See* <u>In Re Munson</u>, 2003 U.S. App. LEXIS 11734, at *2 (D.C. Cir. June 12, 2003). Specifically, under the general venue statute, 28 U.S.C. § 1391(e), actions against an officer or employee of the United States acting in his official capacity may be brought where (1) a

24

Defendant in the action resides, (2) a substantial part of the events giving rise to the claim arose, or (3) the plaintiff resides.  *See*. <u>Munson</u>, *supra*; <u>In Re O'Leska</u>, 2000 U.S. App. LEXIS 35401 (D.D.C. December 7, 2000).

Using the general venue statute, Plaintiffs' age claims also could properly be heard either in the District of Columbia or in the Eastern District of Virginia.  Five of the named Plaintiffs (Bienz, Broyles, Garner, Poole and  Smith ) reside in Virginia; four of the named Plaintiffs (Dingle, James, Simpkins and Thomas,) reside in Maryland; only two of the named Plaintiffs (Parker and Pelzer) reside in Washington, D.C.; and Plaintiff Silkes resides in Florida.  Further, as set forth above, the alleged discriminatory events occurred in Crystal City, Arlington, Virginia.  Finally, the head of Defendant agency, the Secretary of the Navy, "resides" (has his principal office) at the Pentagon, in Arlington, Virginia, in the Eastern District of Virginia.

### 3.   Venue in the Eastern District of Virginia is Appropriate and The Case Should be Transferred

Since Plaintiffs' Title VII claim and the ADEA claim arise out of the same facts, judicial economy commands that these claims be heard together.  Accordingly, since the appropriate venue for the Title VII claims and the ADEA claim would be proper in either the Eastern District of Virginia or the District of Columbia, this case should be transferred to the United States District Court for the Eastern District of Virginia "For the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

It is in the interest of justice to transfer the entire complaint rather than have it heard in two different venues.  <u>Choi v. Department of Transportation</u>, 1990 U.S. Dist. LEXIS 18187, at *5 (D.D.C. 1990).  Generally, the "interest of justice" requires courts to transfer cases to the appropriate judicial district, rather than dismiss them.  <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463,466-67 (1962).

A court may transfer a civil action to any district where the action could have been brought for the convenience of the parties and witnesses, and in the interest of justice.  28 U.S.C. § 1404(a).  The action by a district court to transfer a case to another district is discretionary and involves a "factually analytical, case-by-case determination of convenience and fairness." SEC v. Savoy Industries, 587 F.2d 1149, 1154 (D.C. Cir.1978), *cert. denied*, 440 U.S. 913 (1979).  Consistent with this standard, federal courts have articulated three requirements with respect to such a transfer: (1) that a judicial district exists in which the case might have been properly brought, (2) that the convenience of the parties and witnesses would be better served in an alternative judicial district, and (3) that the interests of justice would be better served in an alternative judicial district.  SEC v. Page Airways, Inc., 464 F. Supp. 461, 463 (D.D.C. 1978). The Eastern District of Virginia meets all three requirements in the present action.

Plaintiffs may properly have brought this action in the Eastern District of Virginia, where the allegedly unlawful employment practices occurred, pursuant to the first prong of the Title VII venue statute in 42 U.S.C. § 2000e-5(f)(3).  Moreover, considerations of convenience and justice weigh in favor of transferring this action to the Eastern District of Virginia.  Of the 12 named Plaintiffs in this case, 11 live in the commuting area of either district.  Specifically, five Plaintiffs live in Virginia, four live in Maryland, and only two live in the District of Columbia. One Plaintiff lives a distance from the others – in Florida.  The majority of the Plaintiffs and the Defendant "reside" in the Eastern District of Virginia, while only two Plaintiffs reside in the District of Columbia.  Some records are maintained in each jurisdiction and some in neither. The Plaintiffs are employed in both jurisdictions.

"Although Plaintiff's choice of forum is entitled to great consideration, it is not determinative when other factors strongly militate, as they do here, in favor of transfer."  *See*

26

Claasen v. Brown,, No. 94-1018, 1999 WL 79490  at *6 (D.D.C. Feb. 6, 1996) (holding that where plaintiff lived in close proximity to alternative forum, it was "of relative minor importance" that plaintiff's lawyers maintained an office in the District of Columbia, and ordering that case be transferred).

This is a predominantly Title VII case.  Congress has specified the "interests of justice in Title VII cases: "the intent of Congress to limit venue to the judicial district concerned with the alleged discrimination."  Stebbins, *supra*, 413 F.3d at 1102-03. The alleged unlawful employment practices – the alleged targeting of the administrative and clerical positions by NAVSEA Headquarters for an A-76 study and the NAVSEA Headquarters decision to abolish those positions – occurred in Crystal City, Arlington, Virginia.  In the interests of justice, therefore, venue should be transferred to the Eastern District of Virginia.

## CONCLUSION

Plaintiffs, individually and collectively as a putative class, have failed to exhaust their administrative remedies.  Individually, Plaintiffs failed to file informal complaints within 45 days of the action complained of as discriminatory – the March 22, 2001 notice that they were to be removed from their positions under the Reduction in Force.  As a class, Plaintiffs failed to file this action with in 90 days of the Agency's March 21, 2001 Final Agency Decision dismissing the administrative class complaint.  Therefore, Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. Rule 12(b)(6), or in the alternative, Defendants should be granted summary judgement as a matter of law.  Alternatively, in the interests of justice, therefore, venue should be transferred to the Eastern District of Virginia.

Respectfully submitted,

/ s /

_____

ROSCOE C. HOWARD, JR., D.C. Bar # 246470
United States Attorney

/ s /

_____

MARK E. NAGLE, D.C. Bar # 416364
Assistant United States Attorney

/ s /

_____

ULDRIC L. FIORE, JR., D.C. Bar # 386152
Assistant United States Attorney
Judiciary Center Building, 10th Floor
555 4th Street, NW
Washington, D.C. 20530
202-307-0299

Of Counsel:

Dale S. Birdoff
Naval Sea Systems Command
SEA 00L
1333 Isaac Hull Ave., S.E. Stop 1150
Washington Navy Yard, D.C. 20376-1150

John D. Noel
Navy Litigation Office
Office of the General Counsel
720 Kennon St., S.E.
Washington Navy Yard, D.C. 20374-5013

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SANDRA L.  JAMES,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 03-1835 (RBW)** |
| | ) | |
| **GORDON R. ENGLAND,** | ) | **ECF** |
| **SECRETARY OF THE NAVY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to LCvR 7.1(h) and in support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there are no genuine disputes.  Exhibits 1 through 20 support this statement.

**A.      A-76 Study**

1.  In a meeting, on May 12, 1999, employees at NAVSEA headquarters were notified that an A-76 study of the 324 administrative and clerical positions would begin.  Exh.17 at 4.

2.  Prior to that meeting, affected employees received individual notification of the A-76 study.  *Id*., at 7-9.

3.  Summaries of the meetings were often printed in the NAVSEA magazine, *The Observer*, and presentations were made available on the NAVSEA intranet.  *Id*. at 4.

4.  As early as May 1999, affected employees were briefed on the possibility that their positions could be abolished if a contractor was successful in the cost comparison and the administrative/clerical work was contracted out, and also  were advised of the potential for reductions in numbers and grade levels if the Most Efficient Organization (MEO) was successful in the competition.  *Id*.

5.  In August 1999, affected employees were briefed on the possibility that a Reduction in Force (RIF) would need to be conducted either because of a change in the organizational structure to the MEO or because the work could be contracted out.  *Id*.

6.  On August 1, 2000, the solicitation was issued.  *Id*. at 5, 10.

7.  Subsequently, an agency study team, which included administrative/clerical employees, including Plaintiff Parker, developed a management plan that included a technical performance plan, an in-house cost estimate, a description of the MEO, a transition plan, and a quality assurance surveillance plan.  The MEO was certified by NAVSEA in October 2000.  *Id*. 5, 11-12.

8.  The MEO was submitted to the Naval Audit Service for independent review certification, and on October 16, 2000, the Naval Audit Service certified that the cost of the MEO could be met and that the PWS could be performed in-house. *Id.*

9.  On December 8, 2000, after a comparison of the in-house cost estimate and the best contractor offer, the tentative decision to retain the administrative and clerical function in-house was announced.  *Id*.

10.  This December 8, 2000 decision was made by Peter F. Brown, NAVSEA's Executive Director.  Exh. 18, Declaration of Peter F. Brown ¶ 7.

11.  On or about December 8, 2000, affected employees were again briefed on the structure and composition of the MEO, as well as on the concept and locations of the Business Service Centers (BSCs), and provided information on a variety of topics including:  the number of positions in the new organization and their associated grade levels, grade and pay retention; the need to conduct a placement RIF and how the RIF would be implemented; and the Priority Placement Program (PPP), the Department of Defense's (DoD) automated placement program to

2

register and match well-qualified displaced or downgraded employees with vacant positions elsewhere in DoD.  Exh. 17 at 5-6.

12.  An appeal of the tentative decision to retain the administrative and clerical function in-house was filed on January 30, 2001.  *Id.* at 6, 13.

13.  The appeal was denied on February 21, 2001.  *Id.* at 6, 14-16.

14.  No protest was filed with the General Accounting Office.  Exh. 17 ¶ 18.

15.  On March 13, 2001, employees were advised of the final decision to retain the administrative and clerical function in-house.  *Id.* at 6.

16.  Affected employees were again briefed on the composition of the MEO, including the number of positions in the MEO and their associated grade levels, were advised that some positions in the MEO would be at a lower grade than their current positions, and were advised that a RIF would be used to effect the new organization.  *Id.*

**B.     The Reduction-in-Force (RIF)**

17.  As a result of the decision to retain the administrative and clerical function in-house and to implement the MEO, a reorganization was effected utilizing the RIF procedures of 5 C.F.R. 351.  Exh. 20 at 2.

18.  On March 22, 2001, 138 administrative and clerical employees, including all of the Plaintiffs named in this action, received notices that advised them that because of the decision to retain the administrative and clerical function in-house, they would be separated from their current positions on June 30, 2001.  *Id.*

19.  The affected employees, including all of the Plaintiffs named in this action, were individually notified that they were each being offered anew position in the MEO.  *Id.*

20.  Employees were advised that if the offered position was at a lower grade than their current position, and if they met other eligibility requirements, they would receive grade retention for up to two years.  *Id.* at 3.

21.  They also were advised that after completing 2 years of grade retention, those meeting eligibility requirements would continue to receive pay retention until their basic rate of pay was equal to or greater than their retained pay.  *Id.*

22.  They were advised that any employee who declined the offered position became ineligible for grade and pay retention and ineligible to participate in the PPP.  *Id.*

23.  During the period prior to the effective date of the RIF (July 1, 2003), NAVSEA provided affected employees with extensive support services, including assistance in PPP registration, information about other sources for job vacancies, counseling and referral services, and assistance in resume preparation.  *Id.*

24.  Employees were advised that their participation in the PPP prior to the effective date of the RIF was voluntary unless they had been offered temporary positions in the MEO.  *Id.*

25.  Some affected employees subsequently received improved job offers within the MEO resulting from vacancies created as a result of other employees accepting job offers outside the MEO.  *Id.* at 3-4.

26.  Seven of the Plaintiffs named in this action (Bienz, Broyles, Pelzer, Poole, Silkes, Smith, and Thomas), ultimately were assigned positions at a lower grade (with save grade and save pay benefits) as a result of the RIF (*i.e.*, "RIF demoted").  *See* Compl., Exhs. 1-12 at 1-3.[1]

---

[1]  Exhibits 1-12 are EEO File Extracts for each Plaintiff, numbered in the alphabetical order of Plaintiff last names.  Page references within each of these exhibits are "Bates" numbers unless otherwise noted.

4

27.  Five of the Plaintiffs named in this action (Dingle, Garner, James, Parker, and Simpkins) were reassigned to positions at the same grade and pay, and with the same benefits as a result of the RIF (*i.e.*, "RIF reassigned").  *Id.*

### C.    The Individual Administrative Complaints of Discrimination

28.  Between June 1, 2001 and July 20, 2001, fifteen present and former administrative and clerical employees of the NAVSEA, including all 12 of the Plaintiffs named in this action, filed individual, informal complaints, each alleging that she had been discriminated against when she received a "Specific Reduction-in-Force (RIF) notification and an offer of Vacant Position in Lieu of Separation" on March 22, 2001.  *See* Exhibits 1-12 at 1-3 (EEO Counselor's Reports for each Plaintiff).

29.  Each complainant claimed that white male managers "went after the most powerless group of employees in selecting the focus for the A-76 [study]." *Id*. at 5.

30.  Each complainant alleged that the A-76 study of approximately 300 employees, comprised of about 97% female and more than 50% African American, had a disparate impact on them. *Id*. at 3-4.

31.  Between September 6 and 17, 2001, thirteen of the informal complainants, including all 12 of the Plaintiffs named in this action, filed individual formal complaints of discrimination. *See* Exhs.1-12 at 6-7 (Formal Complaints of Discrimination).

32.  On May 29, 2003, Defendant dismissed each of the thirteen individual complaints including the complaints of all 12 of the Plaintiffs named in this action, for untimely counselor contact.  *Id*. at 8-9.

33.  Counsel for the individual complainants, including all 12 of the Plaintiffs named in this action, Joseph Gebhardt, who also represents Plaintiffs in this action, received a copy of these dismissals on June 5, 2003.  *Id*.

5

34. Plaintiffs did not appeal the dismissals of their individual complaints to the EEOC.

**D.     Administrative Class Complaint**

35. On August 29, 2001, the thirteen informal complainants, filed a "Motion for Class Certification" ("Motion") with the defendant pursuant to Equal Employment Opportunity Commission ("EEOC") regulations at 29 C.F.R. 1614.204(b).  Exh. 13.

36. The Motion sought certification of a class of approximately 137 present and former administrative and clerical employees at NAVSEA who are female and/or African American and/or over 40 years of age. *Id*. at 1.

37. The Motion alleged that white male management officials singled out the administrative and clerical staff for the A-76 study and then discriminated against them when they abolished their positions through a RIF.  *Id.* at 3, 7-8, 11-12.

38. On November 13, 2001, complainants James, Parker, and Broyles filed a formal administrative class complaint on behalf of the putative class of approximately 137 present and former administrative and clerical personnel.  Exh. 14.

39. The class complaint referenced the Motion for Class Certification and the notices of final interview issued to James, Parker and Broyles at the conclusion of counseling on their individual complaints. *Id.*

40. On February 26, 2003, an EEOC Administrative Judge dismissed the class complaint and directed Defendant to process the thirteen complaints as individual complaints under 29 C.F.R. 1614.302(d).  Exh. 15.

41. Defendant issued a Final Agency Decision (FAD) dismissing the class complaint on March 21, 2003.  Exh. 16.

42. Administrative class agent James received a copy of the FAD on March 27, 2003. *Id*. at 6.

6

43.   Counsel for the putative class in the EEOC proceeding, Joseph Gebhardt, who also represents Plaintiffs in this action. received a copy of the FAD on March 28, 2003.  *Id.*

44.   The FAD advised Plaintiffs of their right to file a civil action in district court within 90 days of their receipt of Defendant's FAD or to file an appeal with the EEOC within 30 days of their receipt of the FAD.  *Id.* at 2-3.

45.   Plaintiffs did not file an appeal of the dismissal of the class complaint with the with the EEOC.

**E.      Venue**

46.   NAVSEA headquarters at all times relevant to the process, actions, decisions and events pertinent to the claims of discrimination in this action, was located in Crystal City, Arlington, Virginia.  Exh. 18, Declaration of Peter F. Brown, ¶¶ 4 – 9.

47.   On July 19, 2001, NAVSEA Headquarters re-located from Crystal City, Arlington, Virginia to the Washington Navy Yard, Washington, D.C.  *Id.* ¶ 10.

48.   The employment records, Official Personnel Files (OPF), for eleven of the Plaintiffs are maintained at the Navy Human Resource Service Center - Northwest, in Silverdale, Washington (State). Exh. 19, Declaration of William D. McCafferty, ¶¶ 2-3.

49.   The employment records (OPF) for Plaintiffs Silkes are maintained at the Federal Records Center in St. Louis, Missouri. *Id.*, ¶ 5.

50.   Records of the budgetary decisions, the ensuing A-76 Study, the MEO, the Cost Comparison, and the RIF action are located in the Pentagon, in Arlington, Virginia, the Washington Navy Yard, in Washington, D.C., and in the individual Plaintiff's OPFs, which are predominantly in Silverdale, Washington.

51.  Plaintiffs all were employed at NAVSEA headquarters in Crystal City, Arlington, Virginia prior to the initiation of the A-76 Study and through the completion of the MEO, Cost Comparison, selection and decision to conduct the RIF.

52.  All named Plaintiffs relocated to the Washington Navy Yard as part of the transition of the NAVSEA Headquarters begun in February 2001 and completed on July 19, 2001.

53.  Eight of the named Plaintiffs presently work in Washington, D.C. at the Washington Navy Yard.  Dingle relocated to the Washington Navy Yard on June 16, 2001, and Bienz, Garner, Pelzer, Poole, Simpkins, Smith and Thomas relocated there on June 30, 2001.

54.  Plaintiff Silkes relocated to the Washington Navy Yard on June 30, 2001, but no longer is employed by the Federal government and resides in Florida.

55.  Three of the named Plaintiffs relocated to and presently work in Arlington, Virginia at the U.S. Marine Corps Annex.  Broyles relocated to the Marine Corps Annex on June 2, 2001, Parker on June 16, 2001 and James on June 30, 2001.

56.  Five of the named Plaintiffs (Bienz, Broyles, Garner, Poole and  Smith ) reside in Virginia; four of the named Plaintiffs (Dingle, James, Simpkins and Thomas,) reside in Maryland; two of the named Plaintiffs (Parker and Pelzer) reside in Washington, D.C.; and Plaintiff Silkes resides in Florida.  *See* Compl. Caption.

57.  The principal office of Defendant, Secretary of the Navy, is the Pentagon, located in Arlington, Virginia.  *See* <u>Monk v. Secretary of the Navy</u>, 793. F.2d. 364, 369 n.1 (D.C. Cir. 1986).

Respectfully submitted,

/ s /
_____

ROSCOE C. HOWARD, JR., D.C. Bar # 246470
United States Attorney

/ s /

_____

MARK E. NAGLE, D.C. Bar # 416364
Assistant United States Attorney

/ s /

_____

ULDRIC L. FIORE, JR., D.C. Bar # 386152
Assistant United States Attorney
Judiciary Center Building, 10th Floor
555 4th Street, NW
Washington, D.C. 20530
202-307-0299

Of Counsel:

Dale S. Birdoff
Naval Sea Systems Command
SEA 00L
1333 Isaac Hull Ave., S.E. Stop 1150
Washington Navy Yard, D.C. 20376-1150

John D. Noel
Navy Litigation Office
Office of the General Counsel
720 Kennon St., S.E.
Washington Navy Yard, D.C. 20374-5013